IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |  | |
|---|---|---|---|
| IOU CENTRAL, INC. | : | | |
| d/b/a IOU FINANCIAL, INC., | : | | |
| | : | | |
| Plaintiff, | : | | |
| | : | | |
| v. | : | | |
| | : | | |
| KAILANI TOURS HAWAII, LLC, | : | CIVIL ACTION NO. | |
| CHRISTOPHER LEE PATERSON, | : | 1:20-CV-0448-LMM | |
| and MIO NOURA PATERSON, | : | | |
| | : | | |
| Defendants. | : | | |

# **ORDER**

This case comes before the Court on Plaintiff IOU Central, Inc. d/b/a IOU Financial, Inc.'s Motion for Default Judgment [29]. Plaintiff asks the Court to enter default judgment against Defendants Kailani Tours Hawaii, LLC, Christopher Lee Paterson, and Mio Noura Paterson. After a review of the record and due consideration, the Court enters the following Order:

**I.   BACKGROUND**

Plaintiff IOU, a lender, alleges that it issued Defendant Kailani Tours a commercial loan. Dkt. No. [15] ¶ 6. In exchange for the loan, Kailani Tours executed a Promissory Note for a principal sum of $212,250.00, which included a Security Agreement that Plaintiff contends encumbered Defendants' property as collateral. Id. ¶¶ 8–9. Plaintiff alleges that Defendant Christopher Lee Paterson, Kailani's owner, signed a Guaranty of the Promissory Note. Id. ¶ 10. In addition

to these contract-related allegations, Plaintiff has raised a patchwork of secondary claims, mostly equitable, in an effort to attach Defendants' property. Id. ¶¶ 31–71.

The Clerk entered default against Defendants on April 8, 2020.[1] Plaintiff now moves for a default judgment against Defendants, seeking judgment on its contract-related allegations; broad equitable relief to encumber Defendants' property through a mortgage lien, "reformation" of the agreements, and "subrogation" of this loan into prior loans issued to Defendants; and attorneys' fees. Dkt. No. [29] at 11–24. Plaintiff seeks to hold all Defendants jointly and severally liable for the loan. Id. at 11.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 55 sets forth a two-step process for securing a default judgment. First, a party seeking default must obtain a Clerk's entry of default pursuant to Rule 55(a) by providing evidence "by affidavit or otherwise" that the opposing party "has failed to plead or otherwise defend." Fed. R. Civ. P. 55; see also Frazier v. Absolute Collection Serv., Inc., 767 F. Supp. 2d 1354, 1360 n.1 (N.D. Ga. 2011) ("First the clerk must enter a party's default . . . [T]he party [seeking default judgment] must then apply to the court for a default

---

[1] The docket indicates that default was entered as to Kailani Tours and Christopher Lee Paterson, but not Mio Noura Paterson. This appears to have been a clerical error since Plaintiff asked that default be entered against all Defendants. Regardless, this omission will not affect the Court's disposition of Plaintiff's Motion for Default Judgment, since the Court is not entering judgment against Ms. Paterson.

judgment."). Second, after the Clerk has made an entry of default, the party seeking default judgment must file a motion for default judgment under Rule 55(b)(1) or (2). A Clerk's entry of default under Rule 55(a) is thus a prerequisite for default judgment to be granted under Rule 55(b). Sun v. United States, 342 F. Supp. 2d 1120, 1124 n.2 (N.D. Ga. 2004).

A default entered pursuant to Rule 55(a) constitutes an admission of all well-pleaded factual allegations contained in a complaint. Nishimatsu Const. Co., Ltd. v. Houston Nat'l Bank, 515 F.2d 1200, 1206 (5th Cir. 1975). However, entry of default does not automatically warrant the Court's entry of default judgment. Frazier, 767 F. Supp. 2d at 1362 (quoting Nishimatsu Constr., 515 F.2d at 1206)).

Even if a defendant is in default, it "is not held to admit facts that are not well-pleaded or to admit conclusions of law." Id.; see also United States v. Khan, 164 F. App'x 855, 858 (11th Cir. 2006) ("[A] default judgment may not stand on a complaint that fails to state a claim."). "There must be a sufficient basis in the pleadings for the judgment entered," and "a default is not treated as an absolute confession by the defendant of his liability and of the plaintiff's right to recover." Nishimatsu Constr., 515 F.2d at 1206. This means that the Court must "consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law." Frazier, 767 F. Supp. 2d at 1362 (quoting 10A Wright, Miller & Kane, Federal Practice & Procedure § 2688 (3d ed.)). A plaintiff's burden at the default judgment stage is "akin to that necessary to survive a motion to dismiss for failure to state a claim." Surtain v.

Hamlin Terrace Found., 789 F.3d 1239, 1245 (11th Cir. 2015). "Conceptually, then, a motion for default judgment is like a reverse motion to dismiss for failure to state a claim." Id.

Since entry of default constitutes an admission of the facts in a complaint, "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c). Moreover, a defaulted defendant does not admit to allegations relating to the amount of damages. Frazier, 767 F. Supp. 2d at 1365. Therefore, before entering a final order regarding a default judgment, a court may conduct a hearing to determine the amount of damages. Fed. R. Civ. P. 55(b)(2)(B). However, "[a]n evidentiary hearing is not a *per se* requirement" for an entry of default judgment pursuant to Rule 55(b)(2) because said Rule "speaks of evidentiary hearings in a permissive tone." SEC v. Smyth, 420 F.3d 1225, 1232 n.13 (11th Cir. 2005); Fed. R. Civ. P. 55(b)(2) (explaining that "[t]he court *may* conduct hearings or make referrals" to determine damages (emphasis added)). "District courts in the Eleventh Circuit have noted that an evidentiary hearing is not necessary where the moving party has provided supporting affidavits as to the issue of damages." Frazier, 767 F. Supp. 2d at 1365.

### III. DISCUSSION

The Court finds that Plaintiff is entitled to partial relief on its Motion for Default Judgment. Plaintiff's claims relating to the loan, Promissory Note and Guaranty are sufficiently well-pled to carry Plaintiff's burden at this stage.

Plaintiff's other claims are insufficiently pled because they are legal conclusions, because they fail to state a cognizable claim, or because the underlying basis for the claims is unclear. See Nishimatsu, 515 F.2d at 1206 ("The defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law."). The Court evaluates Plaintiff's request for entry of judgment in light of its Amended Complaint, beginning with the claims that the Court finds to be adequately pled and then turning to those that are inadequately pled.

### A.  Plaintiff's Contract-Based Claims against Defendants Kailani Tours and Christopher Paterson

Plaintiff requests that the Court enter judgment against Defendants for their alleged breach of the loan agreements, including the Promissory Note and Guaranty. Dkt. no. [29] at 18. Plaintiff alleges that Defendant Kailani Tours took out a commercial loan from Plaintiff and signed a $212,250.00 Promissory Note. Dkt. No. [15] ¶ 8. Plaintiff alleges that Defendant Paterson signed a Guaranty of the Promissory Note. Id. ¶ 10. Plaintiff also alleges that "Defendants breached the Instruments almost immediately after their receipt of the Funds . . . ." Id. ¶ 16. The Complaint implies that they breached the instruments by failing to make payments. Id. ¶ 18 ("Defendants were unable or unwilling to repay the Loan, before its origination . . . ."); id. ¶ 24 ("Defendants breached the Instruments, did not satisfy the Claims, violated their terms, now in default . . . ."); id. ¶ 42 ("Defendants breached the Instruments, failed to make payments and did not otherwise comply with their terms, which are now due.").

The Court finds that these allegations support Plaintiff's request for entry of default judgment on its breach-of-contract claim. Plaintiff's allegations related to Defendant Kailani's breach of the Promissory Note and Defendant Christopher Paterson's breach of the Guaranty are clear enough that Defendants could review the Amended Complaint and understand the basis for their liability. Plaintiff has plausibly alleged breach of these agreements with respect to these Defendants. Accordingly, the Court will enter default judgment as to liability on those claims as to those Defendants.

The Court also finds that Plaintiff must still prove its damages related to breach of the Promissory Note and Guaranty. The Amended Complaint references the full amount due on the Promissory Note but not the outstanding balance on the loan. Plaintiff's Motion does not discuss damages for breach of the instruments except by glancing reference to a verification from Plaintiff's COO. Dkt. No. [29] ¶ 17. This record does not provide the Court with the information it requires to determine damages. Frazier, 767 F. Supp. 2d at 1365 ("While well-pleaded facts in the complaint are deemed admitted, plaintiffs' allegations relating to the amount of damages are not admitted by virtue of default; rather, the court must determine both the amount and character of damages." (quoting Virgin Records Am., Inc. v. Lacey, 510 F. Supp. 2d 588, 593 n.5 (S.D. Ala. 2007))). Accordingly, the Court will defer its ruling on damages but will permit Plaintiff to submit briefing on the issue of damages together with record evidence in support.

Plaintiff's Motion for Default Judgment is **GRANTED** as to liability against Defendant Kailani Tours for breach of the Promissory Note and against Defendant Christopher Paterson for breach of the Guaranty.

### B.   Defendant Mio Paterson's Liability

Each of Plaintiff's claims, except Counts III and IV,[2] are pled against Defendants collectively. This ostensibly includes Defendant Mio Paterson. But Plaintiff's allegations against Ms. Paterson do not state a cognizable claim as currently pled. Plaintiff mentions Ms. Paterson once in the entire Complaint—and then only to allege her citizenship. Dkt. No. [15] ¶ 2. To be sure, Plaintiff raises "a litany of non-specific allegations" against Defendants collectively, but this inexact group mode of pleading does not state a claim as to Ms. Paterson. IOU Cent., Inc. v. Ladd, No. 1:20-cv-112-SDG (N.D. Ga. Jan. 12, 2021), ECF No. [42], at 1. The Amended Complaint fails to clarify what Defendant Mio Paterson is responsible for and the basis for any such liability and, therefore, is deficient under Fed. R. Civ. P. 8(a)(2) with respect to Ms. Paterson. Id. at 8.[3]

---

[2] Counts III and IV are pled against "MLP," an undefined person who never appears elsewhere in the Complaint. Dkt. No. [15] ¶¶ 46–56. Accordingly, the Court declines to enter judgment on those Counts since they would not have put any Defendant on notice of liability. The Court also notes that the Complaint includes no "Count V," but rather jumps from Count IV to Count VI.

[3] Courts in this district, including the Ladd court, have observed that Plaintiff IOU often files generic, boilerplate complaints. Id. at 2 n.1 (collecting cases from the Northern District of Georgia); IOU Cent., Inc. v. Mason, No 1:19-CV-4202-LMM, 2020 WL 6865784, at *2 (N.D. Ga. July 7, 2020). In Ladd and Mason, the complaints were so deficient that Plaintiff was required to replead at the default judgment stage. The Amended Complaint here shares many of the same

Even if the Amended Complaint differentiated between Ms. Paterson and the other Defendants, it would still provide no basis to enter default judgment against her. The Complaint lacks any factual allegations supporting Plaintiff's legal conclusion that the contract Defendants had an agency relationship with Ms. Paterson or that there was a conspiracy between Defendants or that Ms. Paterson somehow induced the contract Defendants to sign the agreements. The basis for Ms. Paterson's liability is either unclear or conclusory throughout the entire Complaint, including the portions dealing with Plaintiff's breach-of-contract claim. Plaintiff has not alleged that Ms. Paterson signed any of the loan agreements. And Plaintiff's collective allegation that "Defendants knew, consented, benefitted and ratified" the loan is a legal conclusion insufficient to carry Plaintiff's burden at default judgment. See Surtain, 789 F.3d at 1245 (describing the default judgment burden as "akin to that necessary to survive a motion to dismiss for failure to state a claim").

This lack of factual allegations makes Plaintiff's claims against Ms. Paterson inadequately pled. See Fed. R. Civ. P. 9(b) ("[A] party must state with particularity the circumstances constituting fraud or mistake."); In re Palm Beach Fin. Partners, L.P., 488 B.R. 758, 777 n.16 (S.D. Fla. 2013) ("[A]s the Plaintiff's conspiracy claim is based upon fraud, the Plaintiff must meet the heightened pleading standard of Rule 9(b)."); Travelers Prop. Cas. Co. of Am. v. Charlotte

---

deficiencies, though there are few enough Defendants that the Court can identify the claims that are adequately pled and prefers to address those directly.

8

Pipe & Foundry Co., No. 6:11-cv-19-Orl-28GJK, 2012 WL 983783, at *6 (M.D. Fla. Mar. 22, 2012) ("[W]hen multiple defendants are accused of misrepresentation, specific allegations are required as to each; a complaint should advise each defendant of the nature of his participation in the fraud." (citing Ambrosia Coal & Constr. Co. v. Pages Morales, 482 F.3d 1309, 1316–17 (11th Cir. 2007))).

Plaintiff's Motion for Default Judgment is therefore **DENIED without prejudice** as to Ms. Paterson.[4] The Court will permit Plaintiff to amend its operative Complaint to add factual details concerning Ms. Paterson if it chooses to do so. If that amended complaint also goes in default, Plaintiff can file a new motion for default judgment.

### C.    Equitable Relief

Plaintiff requests that the Court grant several forms of equitable relief related to Defendants' alleged breach of the loan agreements. These items include the following:

> 1. A declaration that, by virtue of the Promissory Note and Guaranty, Plaintiff holds a security interest/mortgage lien in Defendants' property, including real property referenced in the Complaint plus "their other property, assets or proceeds," Dkt. No. [29] at 15, 20;

---

[4] The Court declines to impose joint and several liability for the same reasons here discussed. Plaintiff has failed to allege facts plausibly supporting the contention that Defendants acted in concert or conspired to defraud it. That said, Defendant Paterson will share Defendant Kailani Tours's liability to the extent provided by the Guaranty.

9

  2. Reformation of the loan agreements based upon Defendants' alleged fraud, id. at 16;

  3. Equitable subrogation, which would put Plaintiff into the shoes of Defendants' former creditors, based upon the allegation that Defendants used Plaintiff's loan to pay their prior debts, id. at 17;

  4. If the Court declines to impose an equitable lien, a constructive trust, id. at 23.

The Court addresses each of these items in turn.

### *1. Equitable Lien or Trust in Defendants' Property*

As to the first and fourth items, which ask the Court to declare Plaintiff's interest in Defendants' properties, Plaintiff has failed to carry its burden of showing a legal basis for these requests. Plaintiff's cited cases dealing with mortgages outline the Georgia-law requirements for the creation of a mortgage interest, but they do not empower the Court to impose a mortgage lien as a remedy in an *in personam* breach-of-contract case. See Dkt. No. [29] at 13–15 (citing Baxter v. Bayview Loan Servicing, LLC, 301 Ga. App. 577, 583 (2009) (discussing the difference between mortgage recordability and enforceability); In re Diamond, 698 F. App'x 571, 574 (11th Cir. 2017) (per curiam) (unpublished) (same)).

Many of Plaintiff's citations are incorrect or misdescribed, which makes it impossible for the Court to identify Plaintiff's authorities. See Dkt. No. [29] at 20–21 (citing 62 Ga. 415 as English v. McElroy when it appears in the reporter as Webb v. Carter and stands for an entirely different proposition that the one Plaintiff identifies); id. (citing 190 S.E.2d 598 as Collier v. Bank when it appears in the reporter as Butts v. Davis and does not stand for the proposition stated).

10

Other of Plaintiff's authorities are simply distinguishable. See, e.g., First Nat'l Bank of Cartersville v. Hill, 406 F. Supp. 351 (N.D. Ga. 1975) (vacated order discussing priority of liens in embezzlement case). If Plaintiff chooses to amend and petition the Court for a mortgage lien again, Plaintiff should cite relevant authorities.

Further, the Court has serious doubts about the propriety of this remedy. While the Court may grant Plaintiff a judgment against Defendants to satisfy Plaintiff's claim for breach of contract, the Court cannot adjudicate rights in property over which it has not asserted jurisdiction. See, e.g., Odyssey Marine Expl., Inc. v. Unidentified Shipwrecked Vessel, 657 F.3d 1159, 1171 (11th Cir. 2011) ("Only if the court has exclusive custody and control over the property does it have jurisdiction over the property so as to be able to adjudicate rights in it that are binding against the world."); Betty K Agencies, Ltd. v. M/V Monada, 432 F.3d 1333, 1341 (11th Cir. 2005) ("In general, 'a valid seizure of the res is a prerequisite to the *initiation* of an *in rem*' action." (quoting Republic Nat'l Bank of Miami v. United States, 506 U.S. 80, 84 (1992))); United States v. $38,570 U.S. Currency, 950 F.2d 1108, 1113 (5th 1992) ("No *in rem* suit can be maintained without a valid arrest of the *res* by the marshal."). This principle is well established in Georgia law, which Plaintiff invokes under the contracts. See Camp v. Aetna Life Ins. Co., 220 Ga. 833–34 (1965) ("Jurisdiction in such cases is solely in rem jurisdiction which depends upon the existence within the state of the property, which must be

capable of seizure in the proceeding, so that the court can obtain jurisdiction by having the property within its grasp.").

Further, "[t]he presence of the res within a court's territorial jurisdiction is necessary before the court can proceed to adjudication." L.B. Harvey Marine, Inc. v. M/V River Arc, 712 F.2d 458, 459 (11th Cir. 1983). Here, the property specifically referenced in the Amended Complaint and referenced in Plaintiff's Motion is real estate in Hawaii, not Georgia. Dkt. No. [15] ¶ 20(a). A declaration of the kind Plaintiff requests may only be within power of a court that has jurisdiction over that property. Because Plaintiff cites no authority to the contrary, the Court finds that Plaintiff has not shown that it is entitled to a mortgage lien.[5]

Plaintiff has likewise failed to show that a constructive trust is appropriate. Plaintiff's cited sources suggest that courts have reserved constructive trust as a remedy for cases of unjust enrichment. See St. Paul Mercury Ins. Co. v. Meeks, 270 Ga. 136, 137 (1998) ("[A] constructive trust is a remedy created by a court in equity to prevent unjust enrichment." (citing Lee v. Lee, 260 Ga. 356, 392 (1990)). "Unjust enrichment is an equitable concept and 'applies when as a

---

[5] Plaintiff's request is also overly vague because Plaintiff requests, in addition to a mortgage on the property discussed in the Amended Complaint, "a security interest in [Defendants'] other property, assets, or proceeds, referenced in the Instruments." Dkt. No. [15] at 29. But the instruments—the loan agreements—reference virtually all property that the signors might own. Id. at 13. This makes it impossible to "specify the debt for which [the mortgage] is given and the property upon which it is to take effect." O.C.G.A. § 44-14-31.

12

matter of fact there is no legal contract . . . , but when the party sought to be charged has been conferred a benefit by the party contending an unjust enrichment which the benefitted party equitably ought to return or compensate for.'" St. Paul Mercury Ins., 270 Ga. at 137 (quoting Engram v. Engram, 265 Ga. 804, 807 (1995)). That scenario does not apply here because Plaintiff has plausibly alleged the existence of a contract, and suit on that contract provides Plaintiff with an adequate remedy. See Collins v. Athens Orthopedic Clinic, 356 Ga. App. 776, 779 (2020) ("[T]he plaintiffs have alleged unjust enrichment as a separate and distinct cause of action and not as an alternative for a failed contract. Therefore, this claim fails as a matter of law."). Accordingly, Plaintiff has not carried its burden at the default judgment stage of showing that it is entitled to a mortgage lien or constructive trust as a matter of law.

That said, Plaintiff's failure to show entitlement to a mortgage lien or constructive trust does not undermine the Court's judgment on Plaintiff's claims for breach of contract. As discussed above, the Court finds that Plaintiff's claims for breach of contract are adequately pled, and the Court's judgment as to those claims will have full force.

### 2. *Reformation*

Plaintiff has also failed to produce authorities showing that it is entitled to reformation. Plaintiff's cited sources support the proposition that "[e]quity may intervene and reform a conveyance when the instrument fails to express accurately the intention of the parties." Zaimis v. Charis, 570 S.E.2d 313, 314 (Ga.

2002). "The reason for the reformation 'must be proven to be the mistake of both parties and the evidence of a mutual mistake must be clear, unequivocal and decisive.'" Bank of Am., N.A. v. Garcia, No. 1:16-cv-4762-JPB, 2019 WL 7484746, at *4 (N.D. Ga. Oct. 30, 2019) (quoting U.S. Bank, N.A. v. Schrubb, No. 1:17-cv-2703-MLB-JCF, 2018 WL 3745047, at *2 (N.D. Ga. Apr. 16, 2018)). The Court finds that Plaintiff has failed to sufficiently allege fraud or mutual mistake of the parties under Rule 9(b). See also O.C.G.A. § 23-2-31 ("Equity will not reform a written contract unless the mistake is shown to be the mistake of both parties . . . ."). Accordingly, Plaintiff has not carried its burden at the default judgment stage of showing that it is entitled to reformation as a matter of law.

### *3. Equitable Subrogation*

The last item of equitable relief that Plaintiff requests is equitable subrogation, which would allow Plaintiff to rank equally with any creditors Defendants paid using Plaintiff's loan proceeds. O.C.G.A. § 10-7-56 ("A surety who has paid the debt of his principal shall be subrogated, both at law and in equity, to all the rights of the creditor and, in a controversy with other creditors, shall rank in dignity the same as the creditor whose claim he paid."); Secured Equity Fin., LLC v. Wash. Mut. Bank, F.A., 666 S.E. 2d 554, 557 (Ga. Ct. App. 2008) ("Equitable subrogation means that in certain circumstances, a lender who pays off the lien of a senior creditor may step into the shoes of the senior creditor as to the priority of the senior creditor's lien."). Plaintiff alleges that this relief is

necessary because Defendants used Plaintiff's funds to satisfy three prior loans which also encumbered Defendants' properties. Dkt. No. [15] ¶ 7.

Plaintiff has failed to produce authorities suggesting that the Court may equitably subrogate its loan against the interests of nonparties. In Plaintiff's only cited case, equitable subrogation was appropriate because the entities whose interests were being adjudicated were parties to the case. See Bank of Am. v. Garcia, No. 1:16-cv-4762-JPB, 2019 WL 7484746. That is not so here.

Plaintiff's requested subrogation would elevate its interests above the interests of Defendants' creditors who issued loans junior to the prior loans referenced in the Complaint. And the subrogation would put Plaintiff on equal footing with the alleged creditor payees into whose loans Plaintiff wishes to subrogate its own.

But Defendants' other creditors are not parties to this lawsuit. Since they are not parties, they have no opportunity to contest Plaintiff's requested subrogation, even though it would be detrimental to their interests. Defendants lack any incentive to contest the remedy, since their indebtedness will not change based solely upon the priority of their creditors. Accordingly, Plaintiff's priority of interest will not become ripe for adjudication before another creditor appears to contest it. Until then, there is no controversy, and the Court is concerned that an opinion declaring Plaintiff's rights to be equal to or greater than those of prior creditors would be purely advisory. See Lujan v. Defenders of Wildlife, 504 U.S. 555, 598 n.4 (1992) (Blackmun, J., dissenting) ("The purpose of the standing

doctrine is to ensure that courts do not render advisory opinions rather than resolve genuine controversies between adverse parties.").[6] If Plaintiff continues to pursue this remedy, it must cite authorities which allow the Court to equitably subrogate Plaintiff's interest as against the interests of nonparties.

Accordingly, the Court **DENIES without prejudice** Plaintiff's Motion for Default Judgment to the extent it requests secondary equitable relief beyond Plaintiff's claim for breach of the Promissory Note and Guaranty. Plaintiff has failed to cite authorities justifying the broad equitable relief it seeks.

### D.  Attorney's Fees

The Court finds that Plaintiff's request for attorney's fees is well-pled. In Plaintiff's claim for breach of the loan agreements, Plaintiff requested that the Court award attorney's fees, interest, and costs. Dkt. No. [15] ¶¶ 44–45 (citing O.C.G.A. § 13-1-11). Plaintiff also alleged that the loan agreements contained attorney's fee provisions, that Defendants defaulted, and that Plaintiff gave Defendants ten days' notice that they could avoid liability for fees by paying their debt. Georgia law supports this request, and the Court will grant it. See FAS Capital, LLC v. Carr, 7 F. Supp. 3d 1259, 1269 (N.D. Ga. 2014) (holding that

---

[6] Viewed another way, Plaintiff may lack standing to obtain equitable subrogation because that remedy does not repair an injury traceable to Defendants' conduct. See Club Madonna, 924 F.3d at 1379 (discussing the requirement "that the party's injury is fairly traceable to the challenged action of the *defendant*") (emphasis added). Defendants' breach of contract entitles Plaintiff to a judgment against *Defendants*, but granting equitable subrogation would benefit Plaintiff at the expense of nonparties.

O.C.G.A. § 13-1-11 supports an award of fees for debt collection when (1) the agreement contained a fee provision; (2) the debt had matured; (3) the debtor had ten days' notice to avoid liability; (4) the ten days expired; and (5) the debt was collected by an attorney). When Plaintiff submits its briefing on contract damages, it should also submit briefing as to attorney's fees, interest, and costs. The Court emphasizes that Plaintiff may only obtain reasonable attorney's fees as to its successful claims, and it should tailor its request to that end.

## IV. CONCLUSION

In accordance with the foregoing, Plaintiff IOU's Motion for Default Judgment [29] is **GRANTED in part** and **DENIED in part**.

Plaintiff's request for a judgment as to Defendant Kailani's liability on the Promissory Note is **GRANTED**. Plaintiff's request for a judgment as to Defendant Christopher Paterson's liability on the Guaranty is **GRANTED**. Plaintiff is **DIRECTED** to move for damages within **21** days of the issuance Order. Plaintiff should provide affidavits in support of its claim for damages on the agreements as well as attorney's fees, interest, and costs.

Plaintiff's request for judgment against Defendant Mio Paterson is **DENIED without prejudice** because Plaintiff's claims against Ms. Paterson are inadequately pled. If Plaintiff so chooses, it may amend its operative Complaint within **21** days of the issuance of this Order with facts supporting its request for judgment against Ms. Paterson.

17

Plaintiff's claims for equitable relief in addition to its claim for money damages on the contracts are **DENIED without prejudice**. Plaintiff has failed to show that it is entitled to the relief it requests as a matter of law. If Plaintiff chooses to produce relevant authorities in a second motion for default judgment, the Court may reconsider its holding regarding the equitable relief.

**IT IS SO ORDERED** this 24th day of February, 2021.

_____
**Leigh Martin May**
**United States District Judge**